Thank you, your honors. Good morning. My name is Roxana Muro and may it please the court. I'd like to reserve two minutes for rebuttal time. I represent the petitioner in this case, Mr. Medina-Rodriguez, who is a longtime lawful permanent resident who was ordered removed under a criminal state statute that is no longer a match to its federal counterpart. Specifically here, Mr. Medina was convicted in 2011 for violating section 11359 of the California Penal Code. Currently, the Controlled Substances Act, which is referenced under the Removability Statute under 1227A2AIII, defines marijuana in such a way that it does not include hemp, and the Federal Controlled Substances Act goes on to define hemp as section 1639. William Barr Counsel, let me add to this. I'm sure you are aware of this, but we are bound by Roman Swastik versus Holder, which has already determined that California Health and Safety Code section 11359 was a categorical match for the federal marijuana offense. So the question then is, do we look at this as of the time of the offense or at a later point? As you know, the Second Circuit has decided Doe versus Sessions, but says we should look at this at the time of conviction. What's your response to Doe? That's correct, Your Honor. In Doe versus Sessions, the court does conclude that we have to look at a time of conviction rule. They do so by looking at Malooly versus Lynch. In Malooly, Justice Ginsburg had resolved whether or not a Kansas statute was overbroad and indivisible by looking at the statute at issue and then looking at the Federal Controlled Substances Act. But the holding in that case did not hinge on whether or not the statute had changed over the course of time. Roman Swastik was decided in 2014. We are now looking at a fundamental change, a material change in the law. And I know Doe versus Sessions advocates for the court looking at a time of conviction rule. And the reasons that they give is because they indicate policy reasons that it promotes efficiency and fairness. However, I think in this case, the converse is true. I think that there have been long-standing canons, and I can submit a 28-J letter for this proposition, but the court should apply the law in effect at the time it renders its decision unless doing so would result in manifest injustice. Here, Mr. Medina was convicted in 2011 for a statute that included hemp. The federal government has now decriminalized hemp, so we're talking about decriminalization here. As we continue, as the laws evolve and change, we are potentially talking about removing someone who has been convicted of something that the and certainly by removing... Well, counsel, let me ask you this. If, indeed, this happened, if your client were prosecuted based upon the pre-existing statute, he would have no defense on this, would he? That's correct. If he had been, yes, that's correct. If he had been brought to removal proceedings earlier than 2018, then yes, Roman Swastik would have controlled. But there's been a fundamental change since then. I understand that, and there may yet be additional changes, but doesn't that almost create chaos in our law if we kind of move the Taylor analysis around on casters based upon whether a state has changed marijuana and other similar laws? I don't believe... I mean, that certainly would be the concern, but I think that the chaos argument should not control here. We have to look at what Congress is intending at the time that the removal proceedings are brought forward. The court I know is concerned with... The DOE court I know is concerned with consulting different statutes, but I think that in this case, you would still have to go back in time and look at what the INA stated back in 2011. So as far as promoting efficiency and fairness, I think that argument cannot stand because the court still has to go consulting statutes. But you would think that since Roman Swastik versus Holder binds us that they freed the cannibal, we really don't have a whole lot of choice on that, do we? Unless we go on bond. Well, I think that Roman Swastik addressed two whether or not there was distribution in exchange for remuneration. I don't think that that analysis changes and neither does the aiding and abetting argument that Roman Swastik issued a decision on. Roman Swastik did not have the opportunity to address whether or not marijuana the way it was defined matched its federal counterpart. So this is a distinct issue. It's just not something that the Roman Swastik court had time to even look at. It was not an issue at the time. So you think Roman Swastik versus Holder did a tailor analysis of California Health and Safety Code 11359? It did do a tailor analysis, but in that case, the petitioner in that case had argued whether or not a sale had been with remuneration. And the court, as you know, had indicated that a sale is a sale. Anytime that there's a commercial sale, there's a transaction for money. This issue that we have before the court now is different because there has been a fundamental change in the law. Mr. Medina is arguing that he is no longer convicted of a violation of a schedule mentioned in the Federal Controlled Substances Act. Olivia, if you're correct about Roman Swastik, then why do you state in your brief that you intend to seek en banc review of that particular case because 11359 sweeps any conduct under your 21 U.S.C. 841b1? Well, there was two arguments, and I think that in Mr. Medina's case, the stronger argument is the classification, is the definition of marijuana. We had also argued the remuneration argument in Mr. Medina's case, but the stronger issue now at this point, we believe, is whether or not Mr. Medina has been convicted. Why are you saying you need to go en banc if the existing case doesn't matter to you, doesn't hurt you? I don't think that we no longer have to go en banc, Your Honor, because there has been a fundamental change in the law. We don't have to disturb the analysis of Roman Swastik. That part may still hold true, but since that date, there has been a fundamental change. The Federal Agricultural Act has now decriminalized hemp, and Mr. Medina has been convicted of a statute that at the time criminalized hemp. I understand your point about the law changing, but it still doesn't change the reality that we're dealing with Roman Swastik as it exists. I understand, Your Honor. I think that Roman Swastik didn't have the opportunity. The issue was not presented. It could not have been presented, because at the time, the definition of marijuana in 2014 matched the Federal definition of marijuana. There was an exact match that was not at issue at the time. Do you want to save any of your time for rebuttal, Counselor? Yes, Your Honor, I do. Okay. Let's hear then from Ms. Yossi. Yes, thank you. If it may please the Court, Mona Youssef for the Attorney General, the respondent in this case. There are two issues, as you know, before this Court, the first of which you've been discussing with Petitioner's Counsel, which is whether or not Petitioner is removable as an aggravated felon because of his conviction in 2011. I would hold, as you pointed out, that this is controlled squarely by Roman Swastik. They analyzed the definition of marijuana at the time between the Federal and the State statute, and that is what we have to look at today. I understand Counsel's point that they feel it's unfair that he would be removed now based on a changed Simpson's conviction, but what we have here is the Supreme Court has told us that we need to look at the categorical approach when we determine whether or not somebody's conviction under the State matches a Federal generic offense. In this case, it did at the time of his conviction, and that's the law that we have to follow at this point. Respondent has listed several cases, I think, to our finding, including Doe v. Sessions, which you've discussed, and in our 28J letter, that the appropriate law to use is at the time of conviction and not during removal proceedings. Would you address your view about Doe? We don't have a case that's expressly on point yet, but should we adopt the reasoning of Doe and find that it's what the law was on the date of the conviction, or do we have kind of a floating standard based upon a subsequent removal point? No, I would definitely agree with the Court's position in Doe, and they're not the only court that's made that position. They're the court that has probably explained it the most, but it's also the position of the 11th Circuit in Gordon and the 3rd Circuit in Martinez, which has also been provided in 28J letters and in Respondent's brief. Basically, you need to know what you're dealing with when you plead guilty to a State crime, and since you have to look at the Federal law at the time, I'm sorry, the State law at the time, you also have to look at the Federal law at the time as well. And as the Court said in Doe, a petitioner's removability should not, as a rule, be based on the faturitas concerning the timing of his removal proceedings or DEA rulemaking, and apparently definitions have changed since 1970 about 160 times. So it would create chaos if all of a sudden you have to compare State law or you have to compare Federal law at a different time. So I would ask this Court to adopt the same type of reasoning that the 2nd Circuit uses in Doe. If there are no other questions about the removability, I can move on to the issue of CAT if the Court would like. In Respondent's, I'm sorry, in Petitioner's brief, they like to use the buzzwords of disability and tattoos to support their claim that their client or that the petitioner established eligibility for protection of removal under CAT. I would argue that there is no evidence in this record at all that anyone who is similarly situated to Petitioner, either in terms of his disability or his tattoos, faces torture in Mexico. As to his disability, the medical documents can be found on page 218, 229 through 36 in the record, and his testimony is basically on pages 169 to 72. Those documents basically establish that he was in a car accident back in 2002, hurt his back, recovered. 20 years later, he suffered a kind of a pain from a hernia, he fell, he re-injured his back, and since then he prefers to use a wheelchair, a walker, and a shower chair to help him get through daily activities. There's no evidence in the record that somebody with his particular disabilities would be confined to a care facility in Mexico, which is where Petitioner basically argues he would be tortured. And lacking that link, he fails his burden of proof. In addition, he submitted articles about wheelchair users in Mexico, which are summarized on page 13 to 15 in a respondent's brief, and although they establish that somebody in a wheelchair may face a culture of pity, as they describe it, or employment discrimination, it also shows that many people are able to get employment opportunities, people become senators, wheel-bound chair people have become senators and community leaders, and Mexico has made great for accessibility and public transportation. None of those articles establish that he faces torture simply because he uses a wheelchair. As to his tattoos, he's claimed on page 182 that he was never in a gang. There's no indication that any of his tattoos are gang tattoos that this court has addressed in the past. Rather, he has 20 tattoos, including of the Virgin Mary, a fairy, marijuana leaf, drums, guitars, and the image of the Santa Muerta. Now, the Santa Muerta is addressed in an article on page 461 in the record. Apparently, there are 10 to 12 million people who are devoted to that particular saint in Mexico, Central America, and the United States. People pray to her for healing, for prosperity, and to find love. And although a lot of, not a lot, but a and although some of her devotees might be people who are incarcerated or in gangs, they're certainly not limited to that population. So there's no evidence in the record that anyone with the tattoos that Petitioner has would face torture by the government or at the acquiescence of the government by other people. Unless there are other questions, the respondent will rest on the breeze. Any questions by my colleague? Nope. Okay. Thank you so much. So we go back to Ms. Moro for a final comment. Thank you, Your Honors. We would request here that the court not follow the rationale and reasoning in Doe v. Sessions. As Doe v. Sessions recognizes, they also were aware that there is no case that that petitioner could point to that indicated we have to look at the removability statute at the time that removal proceedings, I'm sorry, that the removal statute at the time that the state, that the person was convicted for a state offense. But as far as the chaos argument is concerned, Your Honors, the problem here is that we can, and the court sees this all the time, we can have someone who be deporting individuals who are no longer removable simply because 20 years ago, they committed an offense that was removable at the time because the state and federal counterparts matched. But counsel, as I'm sure you know very well, we're going through a period of time in this country and certainly in our state where there's a wholesale, shall I say, reconsideration of a number of laws respecting punishment that were previously there that have been changed, softened, like, for example, the kind of cocaine that would bring heavy penalties versus others. What you're recommending, in effect, would basically undo any certainty when somebody was convicted based on an existing law, they might figure that, well, down the road, it'll all loosen up, so I'll be just fine. How can that be an appropriate policy? Your Honor, that wouldn't be the policy. At the time that the person is facing a state court and facing removability, you're going to consult the laws at the time of conviction, not at the time but certainly what the removability statute states at the time. Whether or not it's fortuitous that the laws may change later does not at any point disturb your analysis at the time that you're facing your state court proceedings. It just doesn't. And so the court is concerned with something that isn't going to be taken into consideration anyway. Good counsel, effective counsel is always going to look at the removability statutes and the criminal statutes at the time the pleas are being entered. I don't believe that practitioners are going to sit there and say, well, you know, I don't have to advise my client correctly because in 10 years from now, this isn't going to be an issue or in two years from now, this is not going to be an issue. And Your Honor, that's correct. The laws are changing. California, Colorado, there is decriminalization going on forward and forward. And so for that reason, the issue here is that Mr. Medina may be convicted, may be removed for an offense that the federal government no longer has an interest in prosecuting. And it would follow that. I think we have your point. We've gone past time. Let me ask my colleague, do either of you have additional questions for Ms. Morrow? Nope. Okay. Thank you both for your argument. The case is submitted and the court is adjourned for the week. Thank you, Your Honor.
judges: M. Smith, Owens, Cardone